| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT, |
| 2 | FOR THE DISTRICT OF MONTANA<br>MISSOULA DIVISION |
| 3 | -------------------------------------------------- |
| 4 | JORE CORPORATION, |
| 5 | Plaintiff, |
| 6 | v. |
| 7 | DRILLCRAFT TOOLS CORPORATION, |
| 8 | |
| 9 | Defendant. |
| 10 | -------------------------------------------------- |
| 11 | <u>CAUSE NO. CV-12-126-M-DWM</u> |
| 12 | <u>PARTIAL TRANSCRIPT OF PROCEEDINGS</u> |
| 13 | <u>August 21, 2012</u> |
| 14 | <u>BEFORE</u>:   MAGISTRATE KEITH STRONG |
| 15 | |
| 16 | <u>APPEARANCES</u>: |
| 17 | Brian F. McMahon<br>John D. Denkenberger |
| 18 | CHRISTENSEN, O'CONNOR, JOHNSON & KINDNESS<br>1420 Fifth Avenue, Suite 2800 |
| 19 | Seattle, WA  98101 |
| 20 | Megan L. Dishong<br>GARLINGTON, LOHN & ROBINSON |
| 21 | P.O. Box 7909<br>199 W. Pine |
| 22 | Missoula, MT  59807-7909<br>      Attorneys for Plaintiff |
| 23 | |
| 24 | |
| 25 | |

| | |
|---|---|
| 1 | <u>APPEARANCES</u> (Continued): |
| 2 | Brian K. O'Bleness<br>Matthew J. Salzman |
| 3 | STINSON, MORRISON, HECKER, LLP<br>1201 Walnut, Suite 2900 |
| 4 | Kansas City, MO  64106-2150 |
| 5 | David Matthew McLean<br>BROWNING, KALECZYC, BERRY & HOVEN |
| 6 | 201 W. Railroad Street, Suite 300<br>Missoula, MT  59802 |
| 7 |     Attorneys for Defendant |

| | |
|---|---|
| 1 | Wednesday, August 21, 2012 |
| 2 | |
| 3 | (WHEREUPON, the following is a partial |
| 4 | transcript of the proceedings had in open court:) |
| 5 | |
| 6 | |
| 7 | THE COURT:  All right.  The record will |
| 8 | show that counsel and the parties are present. |
| 9 | And that I am going to read into the record slowly |
| 10 | my proposed -- or my findings of fact, conclusions |
| 11 | of law and recommendation. |
| 12 | I need not remind everybody, but I will |
| 13 | before I do this, that A, regardless of what I |
| 14 | rule, Judge Molloy's order still remains in effect |
| 15 | and controls at least until its expiration.  And |
| 16 | that this is a preliminary hearing, and none of |
| 17 | these conclusions are either law of the case or |
| 18 | res judicata.  They are a way of dealing with the |
| 19 | pending motion only. |
| 20 | All right.  So my findings and |
| 21 | recommendation are as follows:  Excuse me as I |
| 22 | make a note or two.  This court has jurisdiction |
| 23 | at least under the diversity statute.  The matter |
| 24 | comes before me by reference from Judge Molloy by |
| 25 | virtue of more than one order, and particularly |

1    subject to his order of July 24, 2012, issuing a
2    temporary restraining order.  That temporary
3    restraining order is in full force and effect as
4    extended -- as reflected by the record.
5         The court is required to apply the Winter
6    factors, Winter v. NRDC, 555 U.S. 7 and 20 (2008),
7    to determine whether a temporary restraining order
8    should apply.
9         The facts:  The parties are Jore and
10   Drillcraft, which I -- who are specifically and
11   formally identified in the pleadings, and I will
12   refer to them as Jore and Drillcraft throughout.
13   The parties have during the times relevant to this
14   matter had a business relationship of supplier and
15   buyer.  That relationship is reflected, in part at
16   least, by a document that is in evidence.  It is
17   attached to the complaint.  It's admitted.  It is
18   also separately referred to as Exhibit D2 and was
19   admitted into evidence and referred to by all
20   parties.
21        DTC was a supplier.  Drillcraft was a
22   supplier for Jore.  And at some times, at least,
23   the terms and conditions of Exhibit D2 applied to
24   the relationship between Jore and Drillcraft.
25        The dispute here arises around a product

envisioned by and created by Jore for a customer of Jore, Makita, as a 70-piece I will call it drill bit set.  Jore came up with the idea.  Jore sent requests for quote to several different vendors eventually, and the design -- eventual design was a joint venture of collaboration, but the idea was Jore's.  Then for the Makita project, DTC manufactured and supplied the product, which Jore then provided to Makita.

The communications between the parties during the creation of this product are subject both to some legends on documents calling them confidential and proprietary and also subject to clause 22 of the Defendant's Exhibit 2, the Jore terms and conditions.  And they were proprietary.  They were marked at least proprietary and confidential during these conversations.  However, they were disclosed, the record reflects, to other potential vendors, not just DTC, in requests for quotation.

Makita has since learned that another vendor -- or that a product similar to the product that Jore created for it, and similar to the product that Makita is marketing and is an important marketing device for it with Home Depot,

1  Makita has learned that other similar products
2  have been marketed specifically under the Kobalt
3  brand.  And that that has, the record reflects,
4  already occurred.
5       Makita has made demand upon Jore and
6  threatened suit essentially alleging, as I
7  understand the record, that Jore made this product
8  specifically for them and does not have the right
9  to market it to others.
10      DTC has a contract -- has accepted and is
11 prepared to perform a contract to deliver numerous
12 sets of drill bits of different sizes to Lowe's.
13 That contract is in the final stages of being
14 performed.  DTC intends to perform them.  The
15 contract contains sets of drills and drill bits --
16 excuse me -- not drills, but drill bits and other
17 bits that are, except for items like color and
18 labeling, essentially identical to the set made
19 for Makita.
20      The record does not reflect that Jore
21 ever had the opportunity to bid on that contract
22 with Lowe's.  Does not reflect that it lost the
23 contract because it was underbid.  And but Jore
24 seeks to restrain DTC's performing that contract,
25 and that is the subject of the temporary

restraining order.

The information that was exchanged during the creation, design and original marketing of the Makita product was no longer confidential by the time DTC accepted the contract with Lowe's because when those drill bits are placed on the market, there is no secret that any competitor can examine and reengineer them if they choose to do so. There is nothing that a competitor can't learn and use, and that is not subject to imitation. And there is essentially no larger limit on imitation.

So the information which was confidential and proprietary during the design of the contract ceases to be confidential and proprietary upon the release of the product. Once the product, such as the Makita 70-piece drill bit, is released on the market, any potential competitor has a competitive advantage because they can copy it without the development costs, and that is simply a fact of marketing this kind of product. So the contract was not, as a factual matter, breached by DTC's use or release of confidential information.

The contract, however, contains a clause relating to tooling. The record reflects that DTC has a business relationship, which it refers to as

a partnership, with a business in China, which performs the manufacturing for DTC. DTC is essentially a middleman contracting for the delivery of these products to its own customers. The tooling that is necessary to make this product largely, the record reflects, the case of the product and the product and the case inserts, which make the case more valuable to customers, the tooling to manufacture that product was created by the DTC's China partner, maintained by them at their place of business, used by them in the creation of this particular Makita product and is retained to them to this day and was used by them to manufacture the sum of the products necessary to fulfill the Lowe's order.

The existence of that tooling gave DTC and its China manufacturing partner a competitive edge because the -- it already exists and would not have to have been developed as an additional overhead cost to make this product. The testimony by Jore was uncontroverted that DTC has used that tooling in order to produce this product.

The contract between the parties contains a clause relating to a clause in paragraph 22 relating to tooling. That clause is a part of

1  Jore's standard provisions apparently, as the
2  record reflects, for its vendors, and says the
3  tooling identified as being subject to this
4  clause, and obtained directly or indirectly from
5  the other in connection with this contract, then
6  shall be kept confidential and not be used to
7  compete is a paraphrase of the clause.
8  There is no evidence that Jore ever
9  specifically identified, that is by pointing out
10 and by communicating to either the DTC or to its
11 China customer that the tooling necessary to build
12 the Makita 70-piece set was specifically
13 identified and therefore subject to this clause.
14 The facts indicate that it clearly was, however,
15 obtained by the China factory, at least
16 indirectly, as a necessary step in performing the
17 contract.  There was no evidence that Jore
18 provided DTC or its China partner specifically
19 with any materials, with any equipment.
20 Mr. Cheff testified that he assumed that
21 as a business practice, a person who had received
22 a contract, act as a vendor, would not use any
23 tooling again except with respect to the person,
24 in this case Jore, that ordered it.  However, the
25 contract clause stands as I have read it.  The

tooling was obtained only in the sense that Jore had the idea necessary to create the product the tooling was required to perform.

DTC obtained a competitive price advantage from the tooling and is currently underselling -- at least is currently quoting a price that is one significantly lower than Jore believes it could match, the record reflects, in part because of the ability to use the tooling and in part because of its ability -- its position to not have to develop the product.

Jore drafted this contract, distributes and requires it as a regular course of business. The evidence about the creation of the product was essentially undisputed that all of the parts developed were developed in connection with a customer's demand and all parts were developed for a specific function. There was no evidence introduced of a non-functional trade dress for this product for either the Makita or the Kobalt.

So as a conclusion from those findings of fact, I make the following conclusions of law: The parties had a valid and binding contract entered into in March of 2010. As a matter of Montana law, that contract is strictly --

especially in this commercial setting, strictly interpreted against the drafter. In this case any ambiguity would be interpreted against Jore. There is at least an ambiguity whether materials remained confidential once they are completely disclosed on the market and at least an ambiguity as to whether or not specific tooling needs to be identified under the contract. Those ambiguities must be resolved under Montana law, which applies by the contract's terms, against the drafter, Jore.

The contract was not breached by use of confidential information because it was -- the information in question was already disclosed by the time of the bid. The contract was not breached by the use of DTC's tooling or the tooling of China's DTC partner because that was not specifically identified under the contract, as the terms of Jore's agreement would specify.

There was no trade dress violation because the -- because the evidence did not meet the non-functionality test that the Ninth Circuit has adopted in <u>Leatherman Tool Group v. Cooper Industries, Inc.,</u> 199 F.3d 1009, 1013, Ninth Circuit, 1999.

Therefore, applying the four factors of Winter v. NRDC, I find that the likelihood of success on the merits, while I can't eliminate the possibility, does not reach that likelihood necessary to sustain a temporary restraining order.

The irrevocable harm standard in this case appears to me to be not met because it appears to me that the contract with DTC is already let and ready to be performed, that Jore is not going to get that contract regardless. Jore is facing significant harm, but it appears that monetary damages would be sufficient. And the evidence was uncontroverted that Drillcraft would be destroyed if the injunction continues. So that also deals with the balance of equities.

In this case I do not see a public interest factor myself. This is a contract and intellectual property dispute among private parties. Therefore, I recommend that Judge Molloy, based on those findings and conclusions, dissolve the temporary restraining order and the case proceed to judgment on the merits for monetary remedy.

All right. That's what I've got. So,

1  Betty, how do we go about getting the people a
2  copy?  We should file a copy of my -- the last
3  part of my findings and recommendation that I just
4  did since the break.
5           There being nothing further for our
6  agenda today, we are adjourned.
7
8           (WHEREUPON, court was held in recess.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

depogals@gmail.com

C E R T I F I C A T E

STATE OF MONTANA )
: ss.
County of Cascade )

    I, Betty S. Robinson, do hereby certify that:

    I am a duly appointed, qualified and acting Official Court Reporter of the United States District Court for the District of Montana; that I reported all of the foregoing proceedings had in the above-entitled action, and the foregoing transcript contains a full, true and correct transcript of the said proceedings.

    IN WITNESS WHEREOF, I have hereunto set my hand on this ____ day of _____, 2012.

                                 Betty S. Robinson, RMR
                                 Official Court Reporter